Mr. Beasley appeals a decision from the U.S. Court of Appeals for Veterans' Claims which denies his petition for extraordinary relief in the form of a written mandamus. Mr. Beasley's mandamus petition sought enforcement of his indisputable right to the assistance of the VA in obtaining a necessary medical opinion to substantiate his claim for an earlier effective date for the evaluation of his service-connected disability. The veteran's right to assistance is indisputable by statute and by clear congressional intent that the VA is obligated to assist veterans in developing evidence necessary to substantiate their claim and that is what makes the VA's adjudicatory system unique. Let me ask you so I fully understand the context of what occurred here. So there's a medical opinion in 2010 and that had a retrospective component to it, correct? I do not believe it did, Your Honor. Okay, now you didn't say that in your brief. What you said in your brief is that it missed some lay testimony. That's correct, Your Honor. Was the lay testimony in the record and they just didn't consider it or is the lay testimony new evidence that had never been submitted before? The lay evidence was submitted with Mr. Beasley's request to his treating psychiatrist for that medical opinion. It has since been submitted to the VA and the VA has taken no action on that lay evidence. All right, so the lay evidence was not submitted to the VA before 2010? No, Your Honor, because it was submitted with his request to his treating psychiatrist independent of the VA's request for examination. Okay, now is that evidence that existed as of the 2010 examination or is it evidence that was newly discovered? Well, it was newly developed as it were in that it was solicited by myself on behalf of Mr. Beasley from himself and his family members to describe the severity of his conditions in the relevant retrospective period. Okay, then putting aside the question of the standards for mandamus, would it be your position that legally every time you come up with newly developed evidence, the VA has to give you another medical opinion? No, Your Honor. The point is that under the Veterans Court's decision in CHOTA, the whole notion of the retrospective medical opinion is to rely upon lay evidence when there isn't medical evidence within this retrospective time period. And that's why you seek the medical opinion in order to not just get a doctor's view of the absence of evidence in the period, but to get lay evidence from the veteran himself and from anyone else who's in a position to have observed in order to be able to... Okay, could the lay evidence have been submitted before the 2010? Well, I suppose it could, Your Honor, yes. Because it does relate to an earlier period. Yes, yes. Right. So my question is, what if you got this opinion you're asking for in 2011, and then you developed new evidence in 2012, 2013, do you get another one? Well, I don't know that you would necessarily get another examination, but this case, Your Honor, goes to the question of the VA's obligation to have its employees, in this case, Mr. Beasley's treating psychiatrist, provide him with a retrospective medical opinion. That is part of the VA's duty to assist. What the VA has done here is to say, we control the development of evidence, and we will get this by way of our examiner. Our position is that he has an indisputable right to the assistance of the VA in developing evidence through the VA employee who is actually providing him, has been providing him over a significant period of time, psychiatric treatment. And that the denial of the VA by expressly directing its employee not to respond to this request for assistance is in clear violation of his indisputable right to the assistance of the VA. This is the same treating psychiatrist who had been treating Mr. Beasley all along? Yes. And had he previously provided an opinion based on whatever was before him at some earlier stage? Yes, as a matter of his normal treatment of Mr. Beasley and in relationship to his current level of disability. And so, this fresh opinion, the one that the VA ordered the doctor not to give, would have been based on this additional information? Yes. Consistent with the Veterans Court decision in CHODA, which said that when you have, as in this case, an award of earlier effective date and there is a significant period in which there is little or no evidence of what the actual symptomatology is, then that may be the circumstance in which a retrospective medical opinion is necessary. The Board of Veterans Appeals agreed with that in 2010 and remanded it for that express purpose. But inherent in that purpose is to collect lay evidence. The VA did not collect lay evidence as part of their examination. And when Mr. Beasley developed that evidence and submitted it to a VA psychiatrist, the VA turned around and told their psychiatrist in writing, with a copy to me, not to respond to the request for this assistance. And that is in direct opposition to the VA's duty to assist. If this instruction was given because the psychiatrist was an employee of the VA, if the psychiatrist had been an independent physician, could that instruction still have been given not to provide additional information? I don't believe that the VA would have had any authority to instruct a private practitioner. But if they could have refused, I suppose, to receive the opinion, could they not have? Well, I suppose that's possible, but I don't think that, frankly, would be very likely. It's really much more a matter of the VA instructing a treating psychiatrist not to provide a medical opinion when requested by the veteran. Now, clearly, if the doctor said, I don't believe I'm capable of doing that, then that's the end of the matter. But the VA shut off that opportunity by saying to its employee, you will not respond to this request. Now, that simply is not consistent with the VA's duty to assist. And the important part of this case in the context of mandamus is that the duty to assist is intended by Congress to be provided before the decision is made. But you concede in your brief that you could raise this issue during the appellate process. Yes, Your Honor. I know you say you want to have it sooner, but isn't that concession fatal to your request for mandamus relief? No, Your Honor, it's not. Because the reason is that the alternative relief of an appeal is at least three to five years before there is resolution. And it is a resolution that by necessity is after the VA's decision. The only thing an appeal can do is to correct an error that was made in the adjudication. A mandamus compels action that is unlawfully withheld. It was unlawful for the VA to have instructed its employee not to assist Mr. Beasley. Because the duty to assist requires development of evidence fully and sympathetically prior to the decision. So that all of the evidence is available before they make the decision. But if that's the case, if that's your argument, then any time you have an argument that there's a failure of the duty to assist, it would be your position, I assume, that you could seek a writ of mandamus from this court before the VA ever rules. In other words, you take that whole concept out of the appellate process. I'm sorry, Your Honor. I don't believe that that is an accurate statement of our position or of the circumstances. But it's a logical extension of what you're arguing. But it's not, Your Honor. In this case, we have an express declaration by the VA, we shall not assist. Mr. Beasley's psychiatrist was requested to assist him in the development of evidence by providing this opinion. The VA responded by directing that VA psychiatrist not to assist. Now, that is a different matter than simply the question of whether or not assistance should or should not have been provided or was adequately provided. Now, that's a question... Haven't we said repeatedly that whether the duty to assist has been satisfied is a question of fact? Yes, Your Honor. But in this case, it is a question of law because there is an express refusal to provide assistance. And that's what makes this a mandamus action and not an appellate action. When the VA looks the veteran in the eye and says, we will not assist you, the VA has violated the law. And there has to be a remedy. And that is an extraordinary remedy. And this is an extraordinary set of facts. Well, to pick up, follow up on Judge O'Malley's question, isn't it the case then, if I understand your argument about what the parameters of the mandamus jurisdiction would be, isn't it the case that any time the veteran asks for something from the VA, whether it's an opinion of a doctor or something else, and the veteran's opinion is that that is a form of assistance that the veteran is entitled to, but the VA disagrees, that that would be a mandamusable situation? I think that's correct, Your Honor. So, as long as there's a predicate request, which is denied, no matter what the request might be, even if the request is plainly something that the VA simply says that has nothing to do with this case. In the facts of this case, we have a much more constrained set of parameters. I understand, but we obviously have a concern with the problem of having, shunting a lot of cases off into the mandamus route that otherwise would go through appeals. And the consequence is, it's true that that would be a quicker disposition of a claim for Mr. Beasley, but correspondingly, a slower disposition of claims for other people who aren't on the mandamus track. Because every time one case gets ahead of the others, the others get pushed one slot back, I assume. Well, but Your Honor, this is not really a disposition of the case. No, I understand, but it's a disposition of the argument, which in effect, jumps the line. I mean, it's too bad. It's a concern that the line is as long as it is. But it is that long, and we're not shortening it for everybody, collectively. No, and this appeal does not ask for that shortening for everybody. This appeal asks that when the VA says, as they did here, we will not assist you. We are instructing our employee, the treating psychiatrist of a psychiatrically service-connected veteran, not to provide you a medical opinion. That that is extraordinary circumstances where there is an indisputable right to that assistance. And there simply is no justification in law for this denial. And the lower court's cavalier notion that, well, wait three to five years and resolve this on appeal, in order to simply get a do-over to get what he was entitled to in the first instance, is to simply take that indisputable right and say it's meaningless. I understand. Okay, let's hear from the other side. We'll take your rebuttal then, Mr. Carpenter. Good morning, and may it please the Court. I'd like to pick up on a point that was raised by the Court in Mr. Beasley's presentation, and that is the adequacy of an alternative remit. On page 11 of Mr. Beasley's brief, he concedes that he can get the relief he seeks through the normal appeal process. What he wants to do is to shortcut that process. And this Supreme Court repeatedly held that that is insufficient, because the interest there is that every case will become a mandamus case. This is the duty-to-assist case. This is a very unusual fact. This is a physician who's been treating him, I gather, all along, and who knows his situation and is in the best position to provide information to allow the final disposition to be correct, and is ordered not to respond. Is there something that we don't know that would justify such a curious order? It seems to me that it was a straightforward request and an unusual response. You're saying it's not an unusual response, or that it wasn't a straightforward request, or what? Or that the VA is saving money? Well, I think that the request was unusual. To go to one's physician and say, I have no information, what's your opinion of it? Well, we need to look at what happened here. Mr. Beasley had his examination. A medical opinion was issued the very same time period. Everything he's looking for has been considered. From his same treating psychiatrist or someone else? From someone else. We plainly concede that. So information, evidence, let's call it, of someone who has been your treating physician is properly ordered to be excluded? Well, there's been no assertion that evidence has been excluded. Well, it wasn't even produced, I gather. It wasn't even available. It cut off the threshold. That's something I think there was a misstatement in Mr. Beasley's presentation. He said that the lay evidence was not considered. Now, I want to address that in two parts. First, what evidence was considered and wasn't is a question of fact, which this Court doesn't have jurisdiction to entertain. But if the Court looks at Joint Appendix 130, that is about two pages into the medical opinion that Mr. Beasley did receive from a VA physician, the Court will see that lay evidence submitted by Mr. Beasley during the course of that examination was considered. The examiner interviewed Mr. Beasley, and there's a long discussion, extensive discussion, three or four pages, where the examiner relates what Mr. Beasley told the examiner. And so the notion that evidence wasn't considered is just incorrect. Now, we agree that the affidavits, they certainly post-date the date of the September 2010 medical exam. Now, the letter to the physician said that the doctor would have a conflict of interest, as if giving a medical opinion that might assist the veteran presents a conflict of interest. I had thought that the obligations on the physician and on the VA were to, again, assist the veteran, that the VA doctors are not supposed to give opinions slanted on the side of the VA. I thought that was a very strange bit of an explanation for a lawyer to give to a physician. That's right, and it might be unfortunate language, but I think here's what the... Perhaps it was true. Well, that's possible. I'm not a lawyer that knows that, but it's possible. It was there, it was given by your lawyer. That's right. They have to accept that that was something that was intended and that that was the reason. He said that was the reason, conflict of interest. Well, here's what I think the main concern for VA is, particularly with mental health cases. There's a concern about the integrity of the patient-physician relationship. In mental health cases in particular, you have a necessity of trust. You need to be able to develop a closeness and a rapport with the patient. If the treating physician in a mental health case is put in a position of having to opine about a separate question of benefits and, say, opines negatively, say, if the physician says, well, yes, there are mental health issues, but I don't think he's entitled to benefits, that has a very real possibility of harming the treating-physician-patient relationship. That is something the VA is concerned about, and that is something that I think we all should be concerned about, and it's something that's just sort of unaddressed by Mr. Beasley in this case. We can appreciate his desire to have his treating physician opine about his medical condition, but there are other interests at play. So it is the theory that this potential opinion was excluded because the physician knew the patient, as opposed to the opinion of a physician who doesn't know the patient. Well, I think that is absolutely a concern. That is the Secretary's concern, that the Secretary, as a matter of policy, attempts to not ask for these kind of opinions from treating physicians. It's preferred to have another VA physician, as in this case, take a look at all the relevant materials, interview and examine the claim, just as happened here in Joint Appendix 130, and that is perceived to be the wiser choice, and I think there is some logic behind that. We would ask the Court to accept that logic. We see cases all the time where the treating physician provides an opinion, a diagnosis or whatever, which is in the record. That's right. You just told us that that's against VA policy? No, I want to be clear about what I said. The policy, the concern about a treating physician making the compensation and pension benefits examination is heightened when it comes to mental health issues. So we're talking about a subspecies of all of the ailments. So only psychiatrists are subject to this exclusion. Is that what you're telling us? I'm sorry, did the Court say only psychiatrists? I thought you said with mental health issues, the treating physician is more likely to be excluded. That's right, in a general sense. I think that when, I don't know if it's a psychiatrist as opposed to another kind of physician in particular, but I think when these issues are implicated, that's what the Secretary gets concerned about. So we have a situation where Mr. B has got a medical opinion for the exact same time period that considered the evidence that was of record. That was of record at that time? That's right. Right, but just to make sure I understand what you're saying about the material that's on JA 130 and 131, that does not encompass, I take it, the particular lay evidence that is now at issue that was attempted to be submitted to the treating physician, is that correct? It does to an extent. To the extent that it is Mr. Beasley's lay, but not his relative's. The evidence is, I think, at 83 through 85 or whatever it is, 86 through 87, are those the affidavits? That's right. Or through 88, yeah, all right. That's right. Okay, but here's the interesting thing. If there was an argument that that evidence should have been considered, that argument should have been made to the RO and to the board if necessary. Mr. Beasley went to the Veterans Court and he arrested the process. The board could have made a finding, or the RO could have made a finding, that evidence was submitted, needed to be considered, was considered or wasn't considered. What about his argument that that could take years? Mr. Beasley is now an older man who knows what state he'll be in three or four years from now for purposes of having some new retrospective examination. The exception of mandamus cannot swallow the general rule of direct appeal. That's the answer. Because in every case, someone would be able to say, it's going to take me a year or three or five to go through the process, to query the RO, to appeal to the board, to come to the Veterans Court, and if unsatisfied, to come to this court. So that's not sufficient. I just don't think that the court wants to get into a situation where mandamus becomes the general rule, which it will, if time saved is a criteria that the court will give decisive weight to. Given the way you're arguing this case, is it fair for me to assume that you're abandoning the jurisdictional argument that you made in your brief? No, we are not. Here is the jurisdictional argument. No, I know what the jurisdictional argument is, and that's what I want to ask you about because I've got some trouble with it. Sure. I mean, you cite Lamb very narrowly, despite the fact that it appears to me that Lamb says that the jurisdiction there arises under the All Writs Act, and then you cite two non-parks for the proposition that Lamb is to be read very narrowly. So I went back and I asked my law clerk to pull all the cases that cite Lamb. And we have 49 cases cite Lamb. And out of those 49, only seven say there's no jurisdiction. Three of those, there was clearly a fact issue, and it was really a direct appeal that they colored as a writ. There were the two that you mentioned where the cases where the discussion was very cryptic, but all of the rest, in all of the rest of those cases, we rejected your proposition and said, when you're talking about the All Writs Act, that the application of the All Writs Act is something over which we have jurisdiction. So how do you cite two out of 49 cases for this narrow proposition when, in fact, we have even confidential cases that say we have jurisdiction to consider the Veterans Court's application of the All Writs Act? I think that we need to be careful about what we're talking about. The question of this Court's jurisdiction to review the denial or the denial of a petition for writ of mandamus is pretty clear from Lamb that, as a general matter, this Court can look into that issue. It's not something where someone files an appeal and they say mandamus, and therefore we don't need to know anything else about the case. This Court lacks jurisdiction. That's not the argument. Frank, you argue that any time a Court decides whether or not there's an alternative remedy available, that that's a factual conclusion that we cannot review. If that were the case, we would never be able to review an appeal from a denial of a writ of mandamus because that's always a critical element of it. Well, let me put it this way. The questions that the Court would have to confront to get to the underlying mandamus issue in this case are what evidence was considered in that September 2010 medical opinion? And two, is the right to mandamus indisputable? And to determine that question, the Court would look at 5103A.D. Well, why do we have to determine what evidence was considered? The Veterans Court said, regardless of what evidence was considered, they found an alternative avenue. At page 8 of Mr. Beebe's brief, he certainly argues that the evidence wasn't considered. Here today in oral argument, he argues that the evidence wasn't considered. Now, we think the Court would have to push through that issue to get to the other issues. If the Court disagrees, the Court would still have to confront the question under 5103A.D. as to whether this second medical opinion was necessary. There are no findings that the second medical opinion was necessary. It's a question of necessity. And I think as the Court alluded to under 5103A, questions of reviewing to assist, those are questions of fact. Well, Mr. Carpenter is specifically arguing that we don't need to get to that, because he's saying it doesn't matter whether it's, quote, necessary, that the duty to assist says, as a matter of law, that you have to provide a medical opinion. That's what his argument is. And that's what the, as I read it, that's what the Court of Appeals for Veterans Claim rejected. There's nothing in 5103A.D., or any part of 5103A, or any part of the United States Code or the CFR, that says that you're entitled to a second medical opinion. But that may be true, but that's a merits argument. Mr. Carpenter is saying that, assume with me, he says, that I'm right on the merits, and that 5103 has to be read to give me this right as part of the duty to assist. If I'm right about that, then, he says, I'm entitled to mandates. Now, he may be wrong about that, but that, it seems to me, is not a factual question. That looks a lot like a legal question, if he's right about his legal submission. Correct? We disagree with that, and I think for the reasons stated. Why? Well, to conclude that the Veterans Court abused its discretion in determining that it was not indisputable that Mr. Beasley was entitled to a mandate, well, to make that conclusion, the court would have to look at the statute. And the statutory language says necessary, and necessity is a factual question. So, the court would have to make a determination of fact to say, in this case, it was necessary. But I'm submitting to you that Mr. Carpenter's legal argument is that necessity, as a matter of law, encompasses the entitlement and the obligation on the part of the DVA to provide a medical opinion from the requested source under circumstances that's falling within the category of this case. It may be that you think there's no support for that legal argument, but that strikes me as an inherently legal argument. Under the circumstances of this case, that language is key for the court's question. The court would have to make that assumption. But the way one characterizes the circumstances of a case, one is saying that when a particular set of facts exists, and those facts there's no dispute about, that is to say, a request has been made to the treating physician, Mr. Carpenter's argument is, when that happens, I am, as a matter of law, entitled to that opinion. And you, the Veterans Court, has said no. Why isn't that, as he's framed it, a legal question? That seems to me to be a question that cannot get around, given the abuse of discretion standard that this court would apply in the merits. The court cannot get around the fact that there was a determination made that this medical examination, the second medical examination, was not necessary. The logical extension of your argument is that any time a determination had been made that there was not a clear and indisputable right, or, as you say in your brief, any time a determination has been made that there is an alternative remedy, we would lose jurisdiction, which means we would never have jurisdiction over these cases. Except in cases in which we would be granting mandamus. I just disagree with that. We would not have jurisdiction to deny the writ. I mean, the frustration I'm having is we're talking about 50 cases in which you continue to argue that we don't have jurisdiction in these exact types of circumstances, and I just don't understand how that's not a waste of your time, government money, our time. I mean, you have cogent arguments as to why a writ should not issue. That's where your argument should be. And when I go through page after page after page in your brief about seeing an argument that has been repeatedly rejected by this court with not a single citation to any of the cases where it was rejected, it's a little frustrating. We appreciate that, and I understand the court's concern. We take jurisdiction seriously, as this court does, and when we think that there is a jurisdictional issue, we try to bring it to the court's attention. That's where I would leave it. I'm far over my time. Any more questions? Any more questions for Mr. Hunter? Okay. Thank you, Mr. Hunter. Thank you. Mr. Carpenter. I'd like to begin with a question about the government's reference to their examination, pages 129, I think, and 130 of the Joint Appendix. A careful examination of that will reveal that the relevant time period, and that relevant time period is from July 1987 to January 1994,  is more than 50 percent. That's the time frame at issue. He is, and there is no dispute in the record, considered totally disabled and 100 percent breathing from January 1994 forward. And you say that has nothing to do with the issue in this case, which relates to the 80s? That's correct. And that is what was remanded by the board in 2010 for a retrospective medical opinion. And to characterize the discussion in the VA's examination as being a retrospective examination considering lay evidence, when you don't even talk about the relevant time frame, is to simply elevate form over substance. The substance of this case is about the direction by the VA to deny Mr. Beasley the reasonable request that he made of his treating physician. You're framing this as a legal argument. Yes. The government points out, correctly so, that the duty to assist includes the duty to provide or to obtain a medical opinion when it's necessary to do so. How do you get around the fact that necessity is a component of the legal rights? Because you have to read D in combination with small a. 5103A says that the secretary shall make all reasonable efforts to assist. And I'm suggesting that a reasonable effort to assist this veteran is to allow his treating psychiatrist, notwithstanding all of the post hoc rationalization that you heard about, of the integrity of the patient relationship and potential conflict of interest here, this is a reasonable request for assistance. Whenever you build concepts of reasonableness and necessity into the legal argument, doesn't that make it extraordinarily difficult for you to establish a clear and indisputable right? Reasonable minds can differ as to what's reasonable. So the right may exist, but it might not be indisputable. No, Your Honor, I don't believe so in the facts of this case. In the facts of this case, we have a clear, unequivocal denial by the VA. No, you shall not get the assistance from your VA psychiatrist. You wrote him, you requested an opinion of him, you provided him information, and we are directing our employee not to assist you. Right, but on the facts of this case, that could be reasonable. I'm sorry, Your Honor, I don't think that that is possible to come to that conclusion in the intent of Congress to provide assistance to the VA in this uniquely structured situation. Now, we were in an adversarial situation, Your Honor, and this was discovery. And it was a question of whether or not my client was going to be able to get testimony from his treating psychiatrist. Now, no district court judge is going to deny that information or allow the VA to preclude the psychiatrist from testifying based upon all of these, quite frankly, frivolous assertions of conflict of interest. You undermine the paternal notion here by suggesting that the VA can come in and some parent's patriae overkill and say, we have decided that this is potentially dangerous systemically. And therefore, it's not reasonable. We don't have to, whether they were right about the conflict of interest or not, it's really irrelevant. I mean, that has nothing to do with the existence of a legal right or your ability to pursue that right through mandate. That's correct. And the right is derived by statute. The veteran has the right to expect assistance from the VA. When he reached out to the VA for that assistance, he was not just denied, he was told that it will not be provided. And that has to be a straight up question of law. Because the duty is clearly described and the actions of the VA clearly preclude that under any circumstances. And that is the difference here. I see that I'm out of time. Unless there's further questions? Any more questions for Mr. Krasen?  Any more questions? Thank you very much. Thank you, Mr. Krasen. Mr. Hodes, the case has taken a new submission.